

# Missouri Court of Appeals

## Southern District

### Division One

IN THE MATTER OF THE CARE     )
AND TREATMENT OF               )
DANIEL BOHANNON           )
a/k/a DANIEL R. BOHANNON,     )
a/k/a DANIEL RAY BOHANNON,   )
a/k/a DANIEL BOHANNAN,       )     No. SD35087
a/k/a DANIEL R. BOHANNAN,     )
a/k/a DANIEL RAY BOHANNAN,   )     **Filed: June 18, 2019**
a/k/a DANIEL R. BOHANON,      )
                           )
    Respondent-Appellant.     )

### APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

Honorable Steve Jackson

### AFFIRMED

Daniel Bohannon ("Bohannon") appeals the Laclede County circuit court's judgment committing him to the Department of Mental Health ("DMH") as a sexually violent predator ("SVP"). Bohannon claims he received ineffective assistance of counsel at his trial because his lawyer: (1) failed to file an answer and object to the qualifications of the State's "end of [c]onfinement report" author; and (2) chose to inject evidence of his prior SVP commitment proceeding. He also claims that the trial court abused its discretion in refusing to receive an exhibit into evidence.

Finding no merit in any of these claims, we affirm.

**Factual Background**

Bohannon's sexual offenses began when he sexually abused his two younger sisters for a period of years starting when he was around 13 years old. Bohannon was never charged with those offenses.[1] In 1982, Bohannon was convicted of sodomizing a four-year-old and six-year-old while babysitting. Bohannon was released from prison onto parole in 1984, and less than two years later, he was charged with sexually abusing two young girls he had been babysitting. Bohannon was convicted of sexual abuse in the first degree (a sexually-violent offense) and was sentenced to serve ten years in the Department of Corrections ("DOC") for his abuse of each victim. *See* section 566.100, RSMo 1986.[2]

In 2006, the sexually-violent-predator screening process began for Bohannon when the State sought his commitment as a SVP after an "end of confinement evaluator" found that Bohannon met the criteria. The State voluntarily dismissed that case after Bohannon incurred additional assault charges for throwing hot water on a corrections officer ("the hot water incident") and was ultimately sentenced to DOC for that offense.

Ten years later, in 2016, another end of confinement evaluator, Dr. Angela Webb ("Dr. Webb"), again found that Bohannon met the criteria for a SVP based upon his history and ongoing behavior. The State filed its petition in July 2016 and sought a hearing to determine whether there was probable cause to believe that Bohannon qualified as a SVP.

The circuit court held a hearing pursuant to section 632.489.2, and Dr. Webb was the only witness. Based upon her testimony, the trial court found probable cause to believe that Bohannon was a SVP.

---

[1] Bohannon admitted to these offenses while hospitalized at Fulton State Hospital for psychiatric evaluations in 1982.

[2] Unless otherwise noted, all statutory citations are to RSMo 2016.

The State's retained expert, clinical psychologist Dr. Kent Franks ("Dr. Franks") performed an evaluation of Bohannon, and he testified for the State at trial. Dr. Franks opined that Bohannon suffered from the mental abnormality of pedophilic disorder, as well as alcohol use disorder, antisocial personality disorder, and borderline intellectual functioning. He also believed that Bohannon suffered from a severe mental disorder of a psychotic nature. Dr. Franks concluded that Bohannon's mental abnormality rendered him more likely than not to commit more predatory acts of sexual violence if not confined in a secure facility, and Bohannon thereby qualified as a SVP under Missouri law.

In his defense, Bohannon presented the testimony of Dr. Lisa Mathews ("Dr. Mathews"), a licensed psychologist and certified forensic examiner with DMH at Fulton State Hospital. She diagnosed Bohannon with the mental abnormalities of pedophilic disorder and antisocial personality disorder, but she opined that Bohannon was not a SVP.

The jury unanimously found Bohannon to be a SVP, and the trial court entered an order and judgment committing him to DMH. This appeal timely followed.

**Analysis**

Points one and two allege ineffective assistance of counsel. The right to counsel in SVP cases includes the right to effective counsel. *Grado v. State*, 559 S.W.3d 888, 896 (Mo. banc 2018). When resolution of such claims "involve counsel's actions at trial, and are evident on the record[,]"[3] they may be raised and resolved on direct appeal. *Id.* at 897. Our high court has demurred on deciding whether counsel's effectiveness should be measured by the "meaningful hearing based on the record" standard applied in termination of parental rights cases or on the *Strickland v. Washington*, 466 U.S. 668 (1984), standard applied in

---

[3] *Grado* distinguished these types of reviewable errors with those which "allegedly occurr[ed] off the record or on appeal[.]" *Id.* at 892.

SVP cases in other states and in our post-conviction cases (hereafter "both standards" or "either standard"). Instead, it has reviewed such claims under both standards. *See Grado*, 559 S.W.3d at 892; ***Matter of Care and Treatment of Braddy***, 559 S.W.3d 905, 910 (Mo. banc 2018). We follow suit here.[4]

> Under the "meaningful hearing" standard, this Court would determine – based on the record on appeal – whether counsel provided [Bohannon] with a meaningful SVP hearing. *Strickland* would require [Bohannon] to show by a preponderance of the evidence: "(1) his or her counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure." *Mallow v. State,* 439 S.W.3d 764, 768-69 (Mo. 2014). In order to overcome the "strong presumption that counsel's conduct was reasonable and effective," *Smith v. State,* 370 S.W.3d 883, 886 (Mo. banc 2012), [Bohannon] would have to identify "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance," *Zink v. State,* 278 S.W.3d 170, 176 (Mo. banc 2009). "Trial strategy decisions may only serve as a basis for ineffective counsel if they are unreasonable." *Id.* In order to prove the prejudice prong of *Strickland*, the question is whether "there is a reasonably probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

***Grado***, 559 S.W.3d at 898.

*Point 1 – Failure to Answer the State's Petition*

Point 1 claims Bohannon received

> ineffective assistance of [c]ounsel when his attorney failed to file an answer to the state's petition on time, or out of time before the probable cause hearing because this rendered his numerous objections to the testimony of Dr. [] Webb, the unlicensed psychologist who authored the end of [c]onfinement report for [DOC,] a nullity.

Bohannon argues that "[b]ut for this failure there would have been no finding of probable cause." We disagree.

---

[4] Bohannon does not argue that he was not provided with a "meaningful hearing based on the record" required in termination of parental rights cases. His argument is that his counsel was ineffective under the ***Strickland*** standard. We review his claims under both standards so as to not run afoul of cases like ***Grado*** and ***Braddy***, which state that the proper standard to apply "is an issue that must be left for another day[.]" ***Grado***, 559 S.W.3d at 898.

Bohannon claims Dr. Webb was unqualified to author the end of confinement report and that by failing to file an answer to the State's petition, trial counsel waived any challenge to Dr. Webb's lack of qualifications. The argument fails because a necessary premise – that Dr. Webb was unqualified to render her opinion – is false.

When a person appears to meet the criteria of a SVP, the agency with jurisdiction shall, among other things, provide the attorney general with "[a] determination by either a psychiatrist or a psychologist *as defined in section 632.005* as to whether the person meets the definition of a sexually violent predator." Section 632.483.2(3) (emphasis added). Section 632.005(20) defines a **"[p]sychologist"** as "a person licensed to practice psychology under chapter 337 with a minimum of one year training or experience in providing treatment or services to mentally disordered or mentally ill individuals[.]"

Section 337.010(4) defines a **"[l]icensed psychologist"** as:

[A]ny person who offers to render psychological services to individuals, groups, organizations, institutions, corporations, schools, government agencies or the general public for a fee, monetary or otherwise, implying that such person is trained, experienced and licensed to practice psychology and who holds a current and valid, **whether temporary, provisional or permanent, license** in this state to practice psychology[.]

(Emphasis added.) Section 337.010(5) also recognizes a **"[p]rovisional licensed psychologist"** as one who graduated from "a recognized educational institution with a doctoral degree in psychology . . . and who otherwise meets all requirements to become a licensed psychologist except for passage of the licensing exams, oral examination and completion of the required period of post[-]degree supervised experience[.]"

Bohannon does not dispute that Dr. Webb was provisionally licensed with the State of Missouri when she evaluated him and when she testified at the probable cause hearing. Dr. Webb also testified that, at the time she did Bohannon's evaluation, she had the

5

minimum one year of training or experience in providing treatment or services to mentally ill or mentally disordered individuals. In compliance with the statutory requirements, Dr. Webb was being supervised by a licensed psychologist while doing her work on the case. Under the plain language of the statute, Dr. Webb thus qualified as a psychologist for purposes of section 632.483, which triggers the process by which end of confinement review is implemented.

While Bohannon makes much of the fact that Dr. Webb testified that she had failed on three occasions to pass the licensing examination, Bohannon cites no authority that such failures rendered Dr. Webb unqualified to prepare the end of confinement report as a provisionally licensed psychologist.

As a result, trial counsel did not render ineffective assistance of counsel under either standard by failing to file an answer and object to Dr. Webb's qualifications in an answer to the State's petition. *See Zink*, 278 S.W.3d at 188 ("trial counsel is not ineffective for failing to make non-meritorious objections") (quoting *State v. Lewis*, 874 S.W.2d 420, 427 (Mo. App. W.D. 1994)). Point 1 is denied.

*Point 2 – Counsel's Intentional Reference to Prior SVP Proceeding*

Point 2 claims that Bohannon received "[in]effective assistance of counsel since [trial] counsel injected, opened the door to, and introduced evidence harmful to [Bohannon[.]" Specifically, Bohannon claims that trial counsel made "the prior SVP proceeding . . . a central theme throughout trial on the current petition" by bringing it up in opening statement, in cross-examination of Dr. Franks, on direct examination of Dr. Mathews, and in closing arguments. Bohannon argues that any trial strategy for doing so

6

was "objectively unreasonable since the record reflects that trial counsel opened the door to evidence of a prior SVP proceeding[.]" Once again, we disagree.

As previously mentioned, the State had begun SVP proceedings against Bohannon in 2006, only to dismiss them when Bohannon incurred a new criminal charge for the hot water incident. Bohannon's trial counsel referenced the 2006 proceedings as early as opening statement, despite having earlier filed pre-trial motions *in limine* asking the trial court to exclude any such references.

Bohannon claims that a reasonably competent attorney would have known that the prior aborted SVP proceeding was inadmissible and would not have injected it into the case. In support of his argument, Bohannon cites **State v. McCarter**, 883 S.W.2d 75 (Mo. App. S.D. 1994), a case in which counsel was deemed ineffective for introducing a letter that revealed the defendant had been previously accused of sexually abusing his three young grandchildren. **Id.** at 77, 79. **McCarter**'s holding was based upon the fact that counsel had introduced "evidence of prior uncharged criminal acts of sexual abuse committed against persons other than [the] present victim in [the] sexual abuse trial[.]" **Id.** at 78. Thus, **McCarter** is inapposite. Here, trial counsel's injection of the prior SVP proceedings did not result in the introduction of evidence of prior uncharged acts that would have otherwise been inadmissible.[5]

Instead, as the State convincingly argues, the record makes it clear that trial "counsel pursued a deliberate strategy of bringing out the dismissal of the earlier SVP case to buttress

---

[5] Bohannon does not argue that the hot water incident that resulted in the 2006 SVP petition being dismissed would have been otherwise inadmissible. We also take this opportunity to note that Bohannon's reliance on **Gant v. State**, 211 S.W.3d 655 (Mo. App. W.D. 2007), is similarly unavailing. **Gant** found trial counsel ineffective for adducing cross-examination "testimony that advanced the State's position where the State submitted insufficient evidence to prove probable cause." **Id.** at 659. That testimony made the State's case for them. That is not what occurred here, as Bohannon tacitly admits by not challenging the sufficiency of the evidence to commit him as a SVP.

7

his argument that officials within [DMH] and [DOC] disagreed about whether [Bohannon] met the criteria for a sexually violent predator." Trial counsel's theory was that the hot water incident did not require dismissing the first SVP petition, therefore, as Bohannon had not committed any new sexually-violent offenses, "it [must have been] dropped for another reason[.]"

In pursuing this line of argument, Bohannon was able to elicit testimony from Dr. Mathews, by way of a letter from the Chief of Sex Offender Services, that the Chief did not consider Bohannon to be a sexually violent predator as of 2003. It was clearly trial counsel's strategy to argue to the jury that nothing had changed since that time – meaning that Bohannon had not committed any new sexual offenses between the Chief of Sex Offender Service's writing of that letter in 2003 and the present date that would warrant committing Bohannon as a SVP.

Trial counsel's strategy is also apparent from the following portion of his closing argument.

> Another important fact is the fact that this case was dismissed once before. [The State] will have you suggest that the reason was because he came with a new conviction. Well, if he was a sexually violent predator back then, why the need to dismiss the case, right? Something changed. That's fine. The case can be dismissed. But what has changed since then? Has there been any evidence of sexually violent behavior? Not just violent behavior, but sexually violent behavior, which would justify refiling the case? I don't see any evidence. And I want you guys to talk about that. The case was filed once and it was dismissed ten years ago. There's been no new evidence since that time to suggest that [Bohannon] is a sexually violent predator.

In *Braddy*, also a SVP case, our high court declined to find ineffective assistance of counsel when trial counsel cross-examined State witnesses about the pre-trial screening process for SVPs, despite Braddy's argument that such questioning introduced prejudicial

8

and otherwise inadmissible information. 559 S.W.3d at 910-11. In so holding, the Court noted that "counsel had limited options available[,]" and the information was introduced "as part of the defense effort." *Id.* The same reasoning applies here.

Bohannon does not claim that he did not receive a "meaningful hearing based on the record[.]" *See id.* at 910. As for the **Strickland** test, "actions that constitute sound trial strategy are not grounds for ineffective[-]assistance claims[.]" **Braddy**, 559 S.W.3d at 910 (quoting **State v. Simmons**, 955 S.W.2d 729, 746 (Mo. banc 1997)). Bohannon has failed to prove that trial counsel's conduct was ineffective under either standard. Point 2 is denied.

*Point 3 – Trial Court's Failure to Admit Exhibit P*

In his third point, Bohannon claims the trial court abused its discretion in "refusing to admit Exhibit P, [DOCs]' 2015 *Offender Profile*" because such exhibit met the statutory requirements for admission of business records.

Bohannon moved for admission of Exhibit P at trial, which he identifies as "statistical data about recidivism rates relevant to sex offenders." The State objected on the grounds of hearsay and insufficient foundation. The trial court sustained the objection and directed trial counsel to lay additional foundation for Exhibit P. Trial counsel responded, "Okay. Certainly." But trial counsel did not attempt to lay any additional foundation for the admission of the exhibit, and it was not admitted into evidence.

"If not introduced into evidence, an exhibit is not part of the record and normally cannot be considered on review." **City of Kansas City v. Cosic**, 540 S.W.3d 461, 464 (Mo. App. W.D. 2018) (quoting **McCormick v. Cupp**, 106 S.W.3d 563, 569 (Mo. App. W.D. 2003)). Further, although Bohannon challenges the trial court's exclusion of Exhibit P, he

has not deposited it with this court.[6]  As a result, Exhibit P is not a part of the record on appeal.  ***Cosic***, 540 S.W.3d at 464.  "If original exhibits are necessary to the determination of any point relied on, they shall be deposited in the appellate court by the appellant."  Rule 81.16(a).[7]  "Where ... exhibits are not made a part of the record on appeal, such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appeal."  ***Navarro v. Navarro***, 504 S.W.3d 167, 176 (Mo. App. W.D. 2016) (quoting ***R.K. Matthews Inv., Inc. v. Beulah Mae Housing, LLC***, 379 S.W.3d 890, 892 n.2 (Mo. App. W.D. 2012)).  As a result, Bohannon has failed to prove that the trial court erred in "refusing to admit" Exhibit P.  *See **Cosic***, 540 S.W.3d at 464.

Point 3 is also denied, and the judgment of the trial court is affirmed.

DON E. BURRELL, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

GARY W. LYNCH, J.  – CONCURS

---

[6] Bohannon's brief acknowledges that Exhibit P was not filed with this court and indicated an intent to do so, but that did not occur.

[7] All rule references are to Missouri Court Rules (2019).