In the
 Missouri Court of Appeals
 Western District
 IN THE INTEREST OF: J.N.W., )
 )
 Appellant, ) WD84378
 )
 v. ) OPINION FILED:
 ) February 15, 2022
 JUVENILE OFFICER, )
 )
 Respondent. )

 Appeal from the Circuit Court of DeKalb County, Missouri
 The Honorable Richard Brent Elliott, Judge

Before Special Division: Cynthia L. Martin, Chief Judge, Presiding, Gary D. Witt, Judge
 and W. Brent Powell, Special Judge

 J.N.W. appeals from an order entered by the juvenile division of the Circuit Court

of DeKalb County ("juvenile court")1 dismissing his juvenile proceeding and transferring

him to a court of general jurisdiction for criminal prosecution as an adult pursuant to section

211.071.2 J.N.W. asserts that the juvenile court committed error in certifying him as an

 1
 We use the term "juvenile court," even though the juvenile division is not a separate court but is instead a
division of the circuit court, because the term "juvenile court" is defined in chapter 211 to refer to the "court" with
statutory authority to adjudicate criminal charges against a "child" as defined in that chapter.
 2
 All statutory references are to RSMo 2016, as supplemented through October, 25, 2020, unless otherwise
indicated. Several sections in Chapter 211 were amended in 2018, but the effective date of those amendments has
adult because the evidence did not support that determination and because he was deprived

of due process as the judge was not impartial. J.N.W. further claims that he received

ineffective assistance of counsel during the certification hearing because counsel failed to

object to admission of portions of a police report that constituted inadmissible hearsay and

statements by J.N.W. that were subject to suppression. Finding no error, we affirm.

 Factual and Procedural History

 On October 25, 2020, the Juvenile Officer for the 43rd Circuit ("Juvenile Officer")

filed a petition in the juvenile court alleging that J.N.W., who was then fifteen years old,

needed care and treatment based on an allegation of abuse and neglect ("petition"). The

petition alleged that J.N.W. was in protective custody because he was left without proper

care, custody, and support necessary for his well-being when J.N.W.'s mother was arrested

after fleeing from police at a high rate of speed with J.N.W. and his sibling in the vehicle.

 The next day, the Juvenile Officer filed an amended petition adding an allegation of

delinquency ("amended petition"). The amended petition alleged that after J.N.W. was

taken into protective custody, he attempted to cause serious physical injury to a Children's

Division worker ("victim") by attempting to cut her throat with a knife, and that J.N.W.'s

actions would be assault in the first degree if he were an adult. The juvenile court held a

detention hearing and found probable cause existed to believe that J.N.W. committed the

acts alleged in the amended petition. The juvenile court placed J.N.W. under the juvenile

court's jurisdiction, and ordered J.N.W. detained.

been determined to be July 1, 2021. State v. R.J.G., 632 S.W.3d 359, 364 (Mo. banc 2021). As such, the 2018
amendments to chapter 211 do not apply to this case.

 2
 As authorized by section 211.071.1, the Juvenile Officer filed a motion for

certification to allow prosecution of J.N.W. under the general law as an adult ("motion for

certification"). A certification hearing was required by section 211.071.1 because the

amended petition alleged that J.N.W. committed the offense of assault in the first degree.

The motion for certification alleged that J.N.W. may not be a proper subject to be dealt

with under the juvenile code3 because the alleged offense was serious; was vicious,

forceful, and violent; and was an offense against a person.

 On November 12, 2020, the Juvenile Officer filed a written report as required by

section 211.071.6 summarizing information relevant to determining whether to certify

J.N.W. as an adult ("certification summary"). The certification summary noted that J.N.W.

is a resident of Maryland, and that J.N.W.'s history of offenses or experience with the

juvenile justice system was unknown. The certification summary noted that the Juvenile

Officer had no information about J.N.W.'s "sophistication and maturity in consideration of

his home and environmental situation, emotional condition, and pattern of living." The

certification summary included a recommendation that the juvenile court deny the motion

for certification because the Juvenile Officer believed that commitment of J.N.W. to the

custody of the Division of Youth Services for either an indeterminate or determinate period

of time was a reasonable disposition. The certification summary asserted that commitment

of J.N.W. to the custody of the Division of Youth Services would secure proper supervision

 3
 Chapter 211.

 3
of, and rehabilitative treatment for, J.N.W. in his best interest, and would provide for the

safety of the victim and of the community.

 The juvenile court held the statutorily required certification hearing on February 19,

2021. The Juvenile Officer testified about additional information discovered after

preparation of the certification summary. The Juvenile Officer testified that J.N.W. had

one prior referral in Maryland for assault, which was dismissed for lack of evidence; that

J.N.W. had a history of low and failing grades in a prior school due to a lack of effort, not

a lack of ability; and that J.N.W.'s school records did not reflect a history of behavioral

issues. The Juvenile Officer testified that there was no indication that J.N.W.'s offense

demonstrated a pattern of behavior; that J.N.W. had previously been committed to a

juvenile institution; or that J.N.W. had previously been placed in protective custody. The

Juvenile Officer testified that based on a review of the data from the last five years in the

43rd Judicial Circuit, certifying J.N.W. as an adult would not reflect racial disparity. The

Juvenile Officer recommended denial of the motion for certification, given the lack of

available information about all of the statutory factors for certification, and based on

J.N.W.'s potential for rehabilitation if detained by the Division of Youth Services.

 On cross-examination, the Juvenile Officer identified two photographs that were

referred to in a police report reviewed by the Juvenile Officer to prepare the certification

summary. However, the police report was not offered into evidence. The photographs

depicted the knife allegedly used by J.N.W. to assault the victim, and the injury caused by

the knife to the victim's throat.

 4
 The juvenile court also heard testimony from a community coordinator for the

Division of Youth Services about the programs offered to delinquent juveniles; from the

detention supervisor at the juvenile center about J.N.W.'s demeanor and behavior since the

order detaining him; and from one of J.N.W.'s teachers at the juvenile detention center

about J.N.W.'s performance and behavior in the classroom since the order detaining him.

The victim was present during the certification hearing, but was not called to testify.

 J.N.W. called Dr. James Garbarino ("Dr. Garbarino"), a psychologist specializing

in the development of adolescents, to testify. Dr. Garbarino testified that adolescents, like

all humans, have two types of thought: cold cognition and hot cognition. Dr. Garbarino

testified that cold cognition occurs when a person is in a calm state, and hot cognition

occurs when a person is in a situation of intense arousal. Dr. Garbarino testified that, due

to brain development, an adolescent is less capable of reasoning during hot cognition so

that "[t]here is often a discrepancy between . . . what teenagers or adolescents can articulate

as value positions or moral judgments and then their ability to implement those in arousing

situations." Dr. Garbarino testified that adolescents are less able than adults to regulate

their emotions and to control their impulses.

 The juvenile court interjected during Dr. Garbarino's testimony, and asked J.N.W.'s

counsel, "[W]here are we going with this? Under the statute, I'm to consider about eleven

different factors. Which one are you trying to convince me on here?" J.N.W.'s counsel

answered that Dr. Garbarino's testimony concerned J.N.W.'s mental state, which was

relevant to determining whether J.N.W. was someone who is dangerous to the community

and to determining whether J.N.W.'s actions were knowingly vicious. The juvenile court

 5
responded, "I'm going to let you proceed, and I'll give it the [credibility] or the weight that

I believe that it deserves, okay? But move along."

 Dr. Garbarino then testified about his evaluation of J.N.W., explaining that in

addition to interviewing J.N.W. via Zoom, at which time Dr. Garbarino administered the

Adverse Childhood Experience Scale, he reviewed information sent to him by J.N.W.'s

counsel, including the police report regarding the incident with the victim and J.N.W.'s

school records. Dr. Garbarino testified that, based on his evaluation of J.N.W. and his

review of the provided records, it was his opinion that "[J.N.W.] is not a risk for serious

future chronic violent behavior" and that "[J.N.W. would be] better served by dealing with

him in juvenile court rather than transferring him," citing J.N.W.'s intelligence, functional

family relationships, and lack of history of violent delinquency. Dr. Garbarino testified

that he believed that J.N.W. "was in a state of intense fear about the placement of himself

and his brother in foster care" because J.N.W.'s mother "had given him many stories about

how dangerous it was to go into foster care [and] how much at risk he would be." Dr.

Garbarino explained that it was his opinion that, because J.N.W. was in a state of intense

fear, "he reacted in a very adolescent way, a very short-term thinking, impulsive, self-

protective action which was not a normal criminal motivation" but instead a response to a

perceived threat. Dr. Garbarino testified that he believed J.N.W. was amenable to the

treatment he would receive in the juvenile system.

 At the conclusion of the certification hearing, counsel for both the Juvenile Officer

and J.N.W. recommended that the motion for certification be denied. The juvenile court

 6
took the case under advisement. However, the juvenile judge stated on the record that he

was "troubled by this case:"

 I've been a judge for 21 years, I guess, somewhere in that vicinity, and
 practiced law for about 20 years prior to going on the bench; and during my
 practice of law, I represented the juvenile office for the 43rd Judicial Circuit
 for many, many years and saw just about all the cases that have come down
 through this circuit over the last 40 years. I can tell you right now, this is one
 of the most five serious cases that I've ever seen a juvenile commit. We're
 talking about close to a death here with a dangerous, deadly weapon being
 held to someone's neck. Now, I didn't have the benefit to hear from the victim
 and hear exactly what took place here today. In my opinion, I heard only a
 glossed-over version.

 And I've also heard some troubling information [from witnesses at the
 juvenile detention center] about an individual [who is] not amenable to
 treatment--or, not that amenable to program development, and so forth; a
 person who shuts down when they're asked to do things that they don't like,
 a person who gets upset, somewhat disruptive.

 I'll grant you that we don't have the information about the juvenile's past, and
 apparently they haven't volunteered any information here today either and
 didn't volunteer anything to the doctor [who] interviewed him. So there are
 some areas where this is a questionable call as to whether or not . . .
 commitment to [the] Division of Youth Services would be appropriate. But
 I can tell you right now that . . . the one that's listed number one in the statute
 is the seriousness of the offense alleged. And I don't care what you say or
 what some doctor says. This is one of the most serious cases I've ever seen.
 I cannot imagine how terrifying that had to be to that victim.

 So I'm going to have to give this one some thought and review some
 testimony here and the records and so forth before I can come to a conclusion.
 But we're not talking about someone who apparently was unsophisticated and
 immature from the standpoint that they didn't have the intelligence to
 understand what they were doing because the testimony was quite to the
 contrary. The doctor used the word ["intelligent"]. And the individuals
 [who] he's been working with at the [juvenile detention center] used the
 words ["He is extremely bright with lots of potential"]. So we're not talking
 about someone with some sort of diminished mental capacity here, which is
 why I'm a little surprised at the position that's been taken.

 So I will take it under advisement and notify the parties of my decision
 through the order that I enter.
 7
While the case was under advisement, the juvenile court contacted counsel for the Juvenile

Officer and J.N.W. to request a copy of the police report prepared after the incident

involving the victim, noting that the report had been reviewed and relied upon by Dr.

Garbarino and the Juvenile Officer. The juvenile court advised that if the parties were not

willing to stipulate to admission of the police report into the record, the court would reopen

the record to hear evidence regarding the report. Counsel for the Juvenile Officer and

J.N.W. stipulated to admitting the police report into the record.

 The juvenile court issued an "Order for Certification to Allow Prosecution Under

General Law" ("Order") on March 1, 2021, finding that J.N.W. is not a proper subject to

be dealt with under the juvenile code. The Order explained that the juvenile court's

determination was motivated by: the seriousness of the offense and the injury resulting

therefrom; J.N.W.'s age and the time available for rehabilitation in the juvenile justice

system; the desire to protect the community from future serious offenses committed by

J.N.W.; and J.N.W.'s attitude while in the detention center pending the certification

hearing. The juvenile court dismissed the amended petition; ordered J.N.W. released from

the jurisdiction of the juvenile court; ordered J.N.W. transferred to the court of general

jurisdiction; and ordered that a copy of the amended petition and the Order be transferred

to the prosecuting attorney of DeKalb County, Missouri.4

 4
 Section 211.068 required the motion for certification involving J.N.W. to be provided to the prosecuting
attorney for DeKalb County. Section 211.071.5 permitted (but did not require) the Juvenile Officer to consult with
the prosecuting attorney concerning any offense for which J.N.W. could be certified as an adult under section
211.071. Section 211.068 permitted the prosecuting attorney to be present during the certification hearing, and to
testify "as to the likelihood of prosecution under the general law in the event the court dismisses the petition" that
initiated the juvenile court's jurisdiction. The juvenile court's Order in this case noted that the prosecuting attorney
for DeKalb County "was not called to testify as to how he might proceed with prosecution under the general law."

 8
 J.N.W. appeals.

 Jurisdiction to Entertain this Appeal

 Prior to addressing the merits of J.N.W.'s appeal, we have a duty to determine sua

sponte whether we have jurisdiction to entertain this appeal. Boeving v. Kander, 493

S.W.3d 865, 872 (Mo. App. W.D. 2016). That obligation extends to determining whether

J.N.W. has a right to appeal from the Order, and to whether J.N.W.'s appeal has been timely

filed.

 "Under article V, section 5, it is for the legislature to set the requirements for the

right to appeal." D.E.G. v. Juvenile Officer of Jackson Cnty., 601 S.W.3d 212, 216 (Mo.

banc 2020) (quoting Goldsby v. Lombardi, 559 S.W.3d 878, 883 (Mo. banc 2018)). "The

right to appeal is[, therefore,] purely statutory and, where a statute does not give a right to

appeal, no right exists." Id. (quoting First Nat'l Bank of Dierterich v. Pointe Royale Prop.

Owners' Ass'n, 515 S.W.3d 219, 221 (Mo. banc 2017)).

 Section 211.261.1 provides, in relevant part, that "[a]n appeal shall be allowed to

the child from any final judgment, order or decree made under the provisions of this chapter

. . . . " In D.E.G., our Supreme Court determined that "[a] [section 211.071] judgment

dismissing a juvenile from the juvenile division's jurisdiction is final and appealable." 601

S.W.3d at 218. In reaching that conclusion, the Supreme Court noted that "the juvenile

division [had] entered a 'Judgment of Dismissal pursuant to section 211.071,'" that

"'ordered and adjudged' D.E.G. . . . released and discharged from its jurisdiction," and that

"was signed by the judge." Id. at 217. The Supreme Court observed, "[h]ence, the

judgment dismissing the juvenile division's jurisdiction over D.E.G. was a final, appealable

 9
judgment," and cited to Rule 74.01(a). Id. Rule 74.01(a) defines "judgment" as "a decree

and any order from which an appeal lies," and provides that "[a] judgment is entered when

a writing signed by the judge and denominated 'judgment' or 'decree' is filed."5

 Here, as in D.E.G., the juvenile court's Order released and discharged J.N.W. from

the juvenile court's jurisdiction, and was signed by the judge. However, the juvenile court's

Order is not denominated "judgment." We must determine whether that affects the

appealability of the Order.

 In In re M.P.W., 983 S.W.2d 593, 597-98 (Mo. App. W.D. 1999), this court found

that Rule 74.01(a) did not apply to dispositional orders in juvenile cases. We cited to State

v. Reber, 976 S.W.2d 450 (Mo. banc 1998), where the Supreme Court held that a Rule

24.035 "order" is final and appealable though not denominated a judgment because Rule

24.035 says that motions under the rule are to be "governed by the rules of civil procedure

insofar as applicable," and because Rule 24.035 states that the disposition of a Rule 24.035

will be by an "order." In re M.P.W., 983 S.W.2d at 598; see also In Interest of: C.A.D.,

995 S.W.2d 21, 27-28 (Mo. App. W.D. 1999) (holding that "the denomination requirement

of Rule 74.01(a) is inconsistent with, and inapplicable to, dispositional orders of juvenile

courts, and such orders are appealable pursuant to Rule 120.01 and section 211.261").

 No case has addressed whether the holdings in In re M.P.W. and In the Interest of:

C.A.D. apply to orders entered after a section 211.071 certification hearing. We conclude

they do. Rule 110.01 provides that "Rules 110 to 129 shall govern practice and procedure

 5
 All rule references are to Missouri Supreme Court Rules (2021), unless otherwise indicated.

 10
in the juvenile court and family court divisions of the circuit court under . . . chapter 211 .

. . ." Rule 120.01(a) provides that "[a]n appeal shall be allowed as provided by statute."

Rule 129.04, which addresses dismissal hearings pursuant to section 211.071, expressly

provides at subsection (d) that "[i]f the court finds the juvenile is not a proper subject to be

dealt with under the juvenile code, the court shall order the petition dismissed to permit

the juvenile to be prosecuted under general law and shall include in its order the reasons

for its decision. A copy of the petition and order of dismissal shall be sent to the

prosecuting attorney." (Emphasis added.)

 Consistent with the rationale in In re M.P.W. and In the Interest of: C.A.D., we

conclude that Rule 74.01(a)'s denomination requirement is not applicable to section

211.071 determinations, and that an "order" that is signed by the judge, and that releases

and discharges a juvenile from the juvenile court's jurisdiction, is final and appealable, even

though it is not denominated a "judgment." We are further persuaded to reach this

conclusion by D.E.G. where, after concluding that a section 211.071 determination

denominated as a "judgment" was appealable pursuant to Rule 74.01(a), the Supreme Court

then favorably cited to In re M.P.W., and attributed to that case the holding that a "decision

by the juvenile division to assume jurisdiction is an appealable judgment." 601 S.W.3d at

217. The Supreme Court thus signaled that whether denominated a "judgment" or an

"order," a juvenile court's section 211.071 determination discharging a juvenile from the

 11
juvenile court's jurisdiction, and ordering the juvenile to be transferred to a court of general

jurisdiction for prosecution, is final and appealable.6

 Though we conclude that the juvenile court's Order is appealable, a secondary issue

is when J.N.W.'s appeal from the Order should have been filed. J.N.W. filed his appeal

within ten days of entry of the Order. However, "judgments" are not final for purposes of

appeal until at least thirty days after their entry, pursuant to Rules 75.01 and 81.04(a), and

remain subject during that thirty-day period to "after-trial" motions as provided in Rule

81.05(a).7 In an analogous situation, our courts have concluded that although

postconviction orders pursuant to Rule 24.035 and Rule 29.15 are appealable, even though

not denominated as a "judgment," they do not become final until at least thirty days after

their entry pursuant to Rules 75.01 and 81.04(a), and remain subject during that time to

"after-trial" motions contemplated by Rule 81.05(a). See, e.g., Thomas v. State, 180

S.W.3d 50, 52-54 (Mo. App. S.D. 2005).

 We discern no meaningful reason to reach a different conclusion with respect to

appealable orders discharging a juvenile from the juvenile court's jurisdiction following a

section 211.071 certification hearing. To hold otherwise would incongruently impose

 6
 We are mindful that in Meadowfresh Solutions USA, LLC v. Maple Grove Farms, LLC, 578 S.W.3d 758
(Mo. banc 2019), our Supreme Court held that appeals from authorized interlocutory orders need not be
denominated as a "judgment," but cautioned that judicial orders fully resolving all claims or at least one claim in a
lawsuit and establishing all of the rights and liabilities of the parties with respect to that claim, or judicial orders
properly certified for immediate appeal, remain subject to Rule 74.01(a) and must be denominated as a "judgment"
in order for an appeal to be taken. Id. at 762. However, Meadowfresh did not discuss or abrogate Reber, 976
S.W.2d 450, and did not address the peculiar scenario where a Supreme Court Rule effectively relieves a judicial
order from the Rule 74.01(a) denomination requirement, even though the judicial order is not an interlocutory order,
and instead resolves all claims as to all parties.
 7
 Similarly, "judgments" in all civil cases are subject to the requirements of Rule 78.07(c), which provides
that "allegations of error relating to the form or language of the judgment, including the failure to make statutorily
required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review."

 12
different rules for calculating the timeliness of an appeal depending on whether a section

211.071 determination is denominated as a "judgment" (as in D.E.G.), or as an "order" (as

in the instant case). Instead, we find that application of Rules 75.01 and 81.04(a) to section

211.071 determinations (regardless whether denominated as an "order") enhances the

purpose of section 211.071, as it "affords the same opportunity for review of a [juvenile]

court's ruling as is provided in other types of civil cases. [And,] [i]t affords an opportunity

for due process to litigants . . . that is akin to other civil litigants." Thomas, 180 S.W.3d at

54 (quoting Lung v. State, 179 S.W.3d 337, 340 (Mo. App. S.D. 2005)). That is particularly

so since section 211.071.7(4) requires a juvenile court to make "[f]indings showing the

reasons underlying the court's decision to transfer jurisdiction."8 Following a section

211.071 determination discharging a juvenile from the jurisdiction of the juvenile court, a

juvenile court should be afforded the same authority over its "judgment" for a period of

thirty days that is enjoyed in other civil cases in order to enhance the likelihood that the

juvenile court has made findings that are "sufficient to permit meaningful appellate

review." State v. Nathan, 404 S.W.3d 253, 260 (Mo. banc 2013), superseded on other

grounds by statute as recognized in Jones v. Mo. Dep't of Corr., 588 S.W.3d 203 (Mo.

App. W.D. 2019).

 Consistent with Rule 75.01, Rule 119.02 provides that juvenile courts retain control

over judgments during the thirty-day period after entry as to give the court an opportunity

to vacate, reopen, correct, amend or modify the judgment. Though Rule 119.02 refers only

 8
 See Rules 24.035(j) & 29.15(j) (setting forth the analogous requirement regarding motion court findings in
postconviction proceedings); see also supra note 6 (addressing Rule 78.07(c)); Johnson v. State, 388 S.W.3d 159,
168 (Mo. banc 2012) (holding that Rule 78.07(c) applies to Rule 24.035 and Rule 29.15 postconviction motions).

 13
to "judgments" and not to "orders," the intent is plain. Whether denominated as a

"judgment" or an "order," appealable juvenile court determinations are final for purposes

of appeal no earlier than thirty days after their entry. See In Interest of D.J.B., 704 S.W.2d

217, 218 (Mo. banc 1986) (holding that General Assembly's intent in section 211.261 to

limit the time to appeal from "final judgment[s], order[s] or decree[s]" entered pursuant to

Chapter 211 to thirty days after entry of the judgment, order, or decree was inconsistent

with, and superseded by, Rules 81.04 and 81.05, based on the application of Article V,

section 5 of the Missouri Constitution).

 J.N.W. filed his appeal within ten days after entry of the Order, and thus

prematurely. However, we need not dismiss J.N.W.'s prematurely filed appeal, because a

premature notice of appeal "shall be considered as filed immediately after the time the

judgment becomes final for the purpose of appeal." Rule 81.05(b).

 Having concluded that the juvenile court's Order is appealable and that J.N.W.'s

prematurely filed appeal can be deemed timely because the order has now become final for

purposes of appeal, we turn to the merits of J.N.W.'s appeal.

 Analysis

 J.N.W. raises three points on appeal. His first point argues that the juvenile court's

conclusions leading to certification had no substantial evidence to support them, were

against the weight of the evidence, and erroneously applied the law. His second point

argues that he received ineffective assistance of counsel when counsel failed to object to

admission of the police report because the report should have been redacted to exclude

inadmissible hearsay and statements made by J.N.W. that should have been suppressed.

 14
His third point alleges that the juvenile court prejudged evidentiary issues and failed to

provide him a fair hearing with an impartial decisionmaker. We address the points in turn.

Point One: Certification of J.N.W. as an Adult

 J.N.W. alleges that the juvenile court's certification determination was not supported

by substantial evidence, was against the weight of the evidence, and erroneously applied

the law. J.N.W.'s point on appeal does not comply with Rule 84.04(d). It purports to

challenge the juvenile court's certification determination on three distinct bases, and is thus

impermissibly multifarious.9 We set that concern aside, however, as J.N.W.'s

noncompliant point relied on suffers an even more fundamental deficiency. J.N.W.'s point

relied on presumes an incorrect standard of review.10

 Section 211.071.1 governs the certification of a juvenile for trial as an adult, and

provides, in relevant part:

 [If] a petition alleges that any child has committed an offense which would
 be considered . . . first degree assault under section 565.050, . . . the court
 shall order a hearing, and may in its discretion, dismiss the petition and
 transfer the child to a court of general jurisdiction for prosecution under the
 general law.

 9
 The standard of review referred to in J.N.W.'s first point on appeal is generally applicable to court-tried
cases. See Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976) ("[T]he decree or judgment of the trial court will
be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight
of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."). Each component
of the Murphy standard of review is distinct. Koeller v. Malibu Shores Condo. Ass'n, 602 S.W.3d 283, 287 (Mo.
App. S.D. 2020) (holding that "each Murphy ground is proved differently from the others and is subject to different
principles and procedures of appellate review" (quoting Smith v. Great Am. Assurance Co., 436 S.W.3d 700, 704
(Mo. App. S.D. 2014))). A point on appeal alleging error on all three Murphy grounds is impermissibly multifarious
and preserves nothing for our review. Ebert v. Ebert, 627 S.W.3d 571, 580 (Mo. App. E.D. 2021).
 10
 J.N.W.'s opening brief cites to B.O. v. Juvenile Off., 595 S.W.3d 506, 509 (Mo. App. W.D. 2020), to
support his claim that the standard of review is as referenced in the first point on appeal. B.O. is not applicable to
this case, as it did not involve a certification determination pursuant to section 211.071, which expressly provides
that the decision to certify a juvenile offender as an adult is left to the trial court's discretion.

 15
(Emphasis added). "[A]ppellate review of a juvenile court's decision to terminate

jurisdiction as to a youthful offender is limited to a determination of whether in the totality

of the circumstances the court abused its discretion." In Interest of A.D.R., 603 S.W.2d

575, 580-81 (Mo. banc 1980) (citing State v. Kemper, 535 S.W.2d 241, 247 (Mo. App.

1975): Coney v. State, 491 S.W.2d 501, 512 (Mo. 1973)), superseded by statute on other

grounds as recognized in In Interest of J.L.H., 488 S.W.3d 689, 695 (Mo. App. W. D.

2016).

 J.N.W. argues in his reply brief that the Missouri Supreme Court effectively altered

this standard of review when it determined in D.E.G. v. Juvenile Officer of Jackson County

that section 211.261 permits an immediate right of appeal from a section 211.071

certification determination. We disagree. D.E.G. did not address the standard of review

on appeal, and instead addressed only the immediate right of appeal from a section 211.071

determination before retransferring the matter to the intermediate appellate court. 601

S.W.3d at 219-20. We remain bound, therefore, by In Interest of A.D.R., 603 S.W.2d at

580-81, which provides that a section 211.071 certification determination is to be reviewed

for an abuse of discretion based on the totality of the circumstances. See State v.

Brightman, 388 S.W.3d 192, 199 (Mo. App. W.D. 2012) (observing that "[t]he Court of

Appeals is constitutionally bound to follow the most recent controlling decision of the

Supreme Court of Missouri" (quoting State v. Clinch, 335 S.W.3d 579, 584 (Mo. App.

W.D. 2011)).

 As noted, J.N.W.'s first point relied on does not allege that the juvenile court abused

its discretion based on the totality of the circumstances when it found that J.N.W. should

 16
be certified as an adult. Given the gravity of the issue raised, however, we elect to

generously credit J.N.W. with having preserved a challenge to the juvenile court's

certification determination, albeit a challenge that is subject to a different standard of

review than the one identified by J.N.W. in his point relied on.

 A juvenile court abuses its discretion if its "ruling is clearly against the logic of the

circumstances before it and is so unreasonable and arbitrary as to shock the sense of justice

and indicates a lack of judicial consideration." In Interest of T.M.L., 615 S.W.3d 100, 102

(Mo. App. E.D. 2020). In reviewing a juvenile court's determination for an abuse of

discretion, we will not reweigh the evidence, or determine the reliability or credibility of

the witnesses. State v. Thomas, 70 S.W.3d 496, 504 (Mo. App. E.D. 2002).

 When a certification hearing is required by section 211.071.1, "[a] written report

shall be prepared . . . developing fully all available information relevant to the criteria

which shall be considered by the court in determining whether the child is a proper subject

to be dealt with under the provisions of [chapter 211] and whether there are reasonable

prospects of rehabilitation within the juvenile justice system." Section 211.071.6. "These

criteria shall include but not be limited to:

 (1) The seriousness of the offense alleged and whether the protection of the
 community requires transfer to the court of general jurisdiction;

 (2) Whether the offense alleged involved viciousness, force and violence;

 (3) Whether the offense alleged was against persons or property with greater
 weight being given to the offense against persons, especially if personal
 injury resulted;

 17
 (4) Whether the offense alleged is a part of a repetitive pattern of offenses
 which indicates that the child may be beyond rehabilitation under the juvenile
 code;

 (5) The record and history of the child, including experience with the juvenile
 justice system, other courts, supervision, commitments to juvenile
 institutions and other placements;

 (6) The sophistication and maturity of the child as determined by
 consideration of his or her home and environmental situation, emotional
 condition and pattern of living;

 (7) The age of the child;

 (8) The program and facilities available to the juvenile court in considering
 disposition;

 (9) Whether or not the child can benefit from the treatment or rehabilitative
 programs available to the juvenile court; and

 (10) Racial disparity in certification."

Section 211.071.6. The juvenile court is not required to give equal weight to, nor to make

express findings on, each one of these non-exclusive factors. Thomas, 70 S.W.3d at 504.

And, although the nature of the offense alleged is relevant to the certification process, the

juvenile court is not required to find or assume that the allegations against a juvenile are

true. Nathan, 404 S.W.3d at 260. Rather, the court is only required by section 211.071.7(4)

to make "[f]indings showing the reasons underlying the court's decision to transfer

jurisdiction" in a manner "that is sufficient to permit meaningful appellate review." Id. at

260-61.

 The Order considered and made detailed findings with respect to each of the

statutory criteria identified in section 211.071.6. The Order's findings with respect to two

factors were in J.N.W.'s favor (the absence of a pattern of similar offenses, and of a record

 18
and history with the juvenile justice system), and were neutral with respect to two

additional factors (J.N.W.'s age and the lack of racial disparity in the certification process).

J.N.W. does not challenge these findings.

 The Order found with respect to two other criteria that J.N.W.'s offense was

extremely serious and that protection of the community requires transfer to a court of

general jurisdiction, and that J.N.W.'s offense was committed against a person and resulted

in injury. J.N.W. concedes that his offense was serious and committed against a person,

resulting in injury. J.N.W. argues, however, that the "seriousness of the offense" factor

requires both that the offense be serious and that protection of the community requires

transfer before that factor can be relied on to support certification of a juvenile as an adult.

Though J.N.W. acknowledges that the juvenile court found both parts of this criteria

unfavorably to him, he argues that the finding that protection of the community required

transfer to a court of general jurisdiction is not supported by the evidence.

 J.N.W.'s contention that a juvenile court must find both that an offense is serious

and that community protection requires transfer to a court of general jurisdiction is not

supported by any authority, and is in opposition to the settled principle that a juvenile court

is not required to give equal weight to, nor to make express findings on, each one of the

non-exclusive statutory criteria set forth in section 211.071.6. Thomas, 70 S.W.3d at 504.

It cannot be said, therefore, that an offense is serious only if the protection of the

community requires transfer to a court of general jurisdiction. Nor can it be said that an

offense is not serious if protection of the community does not require transfer to a court of

general jurisdiction. Rather, the "seriousness" of the offense is a factor distinct from

 19
whether community protection requires transfer, and it is not essential that both factors be

found unfavorably to a juvenile in order to support certification as an adult.

 Even if the juvenile court was required to find both that J.N.W.'s offense was serious

and that the protection of the community requires transfer to a court of general jurisdiction

(which it was not), both factors were established here. Though J.N.W. argues that the

juvenile court "clearly erred" when it failed to accept Dr. Garbarino's testimony that J.N.W.

would not be a danger to the community, this argument ignores that the juvenile court

found Dr. Garbarino's testimony to be neither credible nor persuasive. The juvenile court's

credibility finding was not limited, as J.N.W. argues, to Dr. Garbarino's testimony about

the seriousness of J.N.W.'s offense. Instead, in the section of the Order addressing both

the seriousness of the offense and whether protection of the community requires transfer

to a court of general jurisdiction, the juvenile court expressly found that Dr. Garbarino

"chose to rely only upon information presented in a light most favorable to [J.N.W.]. His

lack of objectivity and unwillingness to accept or consider credible evidence or accounts

reflect such a bias that this Court finds his conclusions of limited value." We defer to the

juvenile court's determination of the reliability or credibility of witnesses. Thomas, 70

S.W.3d at 504.

 With respect to yet another statutory criteria. the juvenile court found J.N.W.'s

offense to clearly involve viciousness, force, and violence. J.N.W. concedes in his brief,

"the allegation of cutting a person's neck with a knife, on its face, is vicious, a use of force,

and violent." [Appellant's Brief, p. 24] Yet, J.N.W. argues the cut on the victim's neck

was not "a deep cut" and was characterized by a police detective as a "scratch."

 20
[Appellant's Brief, p. 25] J.N.W. also argues that the attack on the victim was not vicious,

violent, or forceful because the testimony of Dr. Garbarino supported a conclusion that

J.N.W. just wanted to scare the victim, and was not intentionally violent or forceful.

However, although the victim's injury was not as serious as it could have been, that fact

does not detract from the nature of J.N.W.'s offense, which, as J.N.W. concedes, was

inherently vicious, violent, and forceful. In addition, J.N.W.'s argument once again ignores

that the juvenile court found Dr. Garbarino's attempts to soften the nature of J.N.W.'s

offense to be unpersuasive.

 J.N.W. spends considerable time contesting the juvenile court's findings on the

remaining statutory criteria addressing J.N.W.'s sophistication and maturity; the

sufficiency of programs and facilities available to the juvenile court; and whether J.N.W.

was likely to benefit from treatment or rehabilitative programs available to the juvenile

court. The juvenile courts findings on each of these criteria supported dismissal of the

amended petition and certification of J.N.W. as an adult. In contesting the findings on each

of these criteria, J.N.W. highlights evidence that could have supported alternative

conclusions; disregards the juvenile court's determination that Dr. Garbarino's testimony

was not credible or persuasive; and disregards that the juvenile court discredited the

credibility of, or weight to be afforded to, testimony from the Juvenile Officer and the

community coordinator for the Division of Youth Services regarding the availability of

programs and facilities for J.N.W. in the juvenile justice system. Our standard of review

does not allow for us to reweigh the evidence, or to determine the reliability or credibility

of the witnesses. Thomas, 70 S.W.3d at 504.

 21
 We recognize this is an unusual case, as the Juvenile Officer did not recommend

certifying J.N.W. as an adult in the proceedings before the juvenile court. 11 But, despite

that fact, the totality of the circumstances in this case do not support a conclusion that the

juvenile court abused its discretion by determining that the amended petition should be

dismissed, and that J.N.W. should be transferred to a court of general jurisdiction for

prosecution.

 Point One is denied.

Point Two: Effectiveness of Counsel

 J.N.W.'s second point on appeal argues that he received ineffective assistance of

counsel because his counsel failed to object to admission of the police report into evidence

after the certification hearing had concluded and the matter had been taken under

advisement. J.N.W. does not challenge the juvenile court's request to expand the record

by seeking admission of the police report after the certification hearing had concluded.

And J.N.W. does not categorically challenge admission of the police report into the record.

Instead, J.N.W. argues that counsel should have objected to the juvenile court's request to

stipulate to admission of the report, which would have resulted in reopening of the record,

permitting counsel to object to admission of those portions of the report that constitute

inadmissible hearsay from the victim, and statements by J.N.W. that should have been

suppressed as the product of an illegal interrogation. J.N.W. claims that he was prejudiced

by his counsel's ineffective assistance because the juvenile court relied on the inadmissible

 11
 Curiously, the Juvenile Officer has taken the opposite position on appeal.

 22
hearsay statements from the victim and statements made by J.NW. during an illegal

interrogation to certify J.N.W. as an adult.

 "Certification proceedings do not have to 'conform with all of the requirements of a

criminal trial or even of the usual administrative hearing' as long as they 'measure up to the

essentials of due process and fair treatment.'" Nathan, 404 S.W.3d at 260 (quoting Kent v.

United States, 383 U.S. 541, 557-62 (1966)). So long as the juvenile is provided a hearing,

the right to counsel, and access to his or her records, and the decision of the juvenile court

adequately sets forth the basis of its decision to relinquish jurisdiction to allow for appellate

review, the certification process passes constitutional muster. Id. (citing Kent, 383 U.S. at

557-63).

 However, "[t]his right to counsel implies that counsel must be effective." D.C.M.

v. Pemiscot Cnty. Juvenile Off., 578 S.W.3d 776, 782 (Mo. banc 2019) (citing In re Gault,

387 U.S. 1, 30 (1967), overruled on other grounds by Allen v. Illinois, 478 U.S. 364, 372-

73 (1986); In re R.G., 495 S.W.2d 399, 403 (Mo. 1973)). "The due process right to counsel

'would be hollow were there no accompanying requirement counsel be effective.'" Id.

(quoting Grado v. State, 559 S.W.3d 888, 896 (Mo. banc 2018)). Thus, in D.C.M., a

juvenile delinquency proceeding, the Supreme Court recognized that a juvenile has a right

to effective counsel in a delinquency proceeding. Id.

 The Supreme Court in D.C.M. also recognized, however, that "no statute or case

from this Court provides a mechanism for a committed juvenile to raise an ineffective

assistance of counsel claim." Id. The Court thus held that claims of ineffective assistance

 23
of counsel in juvenile proceedings where there is a right to counsel can be raised on direct

appeal:

 When deciding whether claims for ineffective assistance of counsel can be
 addressed on direct appeal, the pertinent question is whether the record is
 sufficient to address the claim. Considering the sufficiency of the record
 when determining whether ineffective assistance of counsel claims can be
 addressed on direct appeal is consistent with the approach taken by this Court
 in termination of parental rights and sexually violent predator cases. See In
 re Adoption of C.M.B.R., 332 S.W.3d 793, 820 n.22 (Mo. banc 2011)
 (clarifying that ineffective assistance of counsel claims could be addressed
 on direct appeal when such claims could be sufficiently evaluated on the
 record), overruled on other grounds by S.S.S. v. C.V.S., 529 S.W.3d 811, 816
 n.3 (Mo. banc 2017); Grado, 559 S.W.3d at 897 (addressing claim of
 ineffective assistance of counsel in a sexually violent predator proceeding
 when all claims "involve[d] counsel's actions at trial, and [were] evident on
 the record"). In accordance with this precedent, this Court will review the
 record and, if the record is sufficient, address [the juvenile's] ineffective
 assistance of counsel claims on direct appeal.

Id. (footnote omitted).

 We can discern no reasoned basis to differentiate between a juvenile delinquency

proceeding and a juvenile certification hearing with respect to the right to effective

assistance of counsel. We read D.C.M. to require the conclusion that J.N.W. was entitled

to effective counsel in his certification hearing, and is entitled to raise a claim of ineffective

assistance of counsel on direct appeal, where the claim will be addressed if the record is

sufficient.12

 12
 The Supreme Court recognized that claims of ineffective assistance of counsel based on a failure to
adequately investigate or prepare for trial, or a failure to pursue witnesses or defenses typically could not be
addressed on direct appeal because the record would likely be insufficient to review the claim. D.C.M., 578 S.W.3d
at 783. In such a case, remand for an evidentiary hearing may be necessary to determine whether counsel was
effective. Id. at 784-85.

 24
 The standard to be applied to J.N.W.'s claim of ineffective assistance of counsel is

an unresolved issue. D.C.M. did not address the standard to be applied to such claims in

juvenile proceedings because the record was insufficient to address the juvenile's claims of

ineffective assistance on direct appeal, requiring remand. Id. at 784 n.11. The Court

observed, however, that the juvenile argued counsel should be held to the Strickland

standard applied in post-conviction proceedings, while the juvenile officer argued counsel

should only be held to the "meaningful hearing" standard applied in termination of parental

rights proceedings. Id. The Strickland standard requires a demonstration by a

preponderance of the evidence that: (1) trial counsel failed to exercise the level of skill and

diligence that of a reasonably competent attorney under similar circumstances, and (2) the

defendant suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687

(1984); McFadden v. State, 619 S.W.3d 434, 445 (Mo. banc 2020). The "meaningful

hearing" standard is less strident, requiring only that the record establish that an attorney

provided his client with a meaningful hearing. In Interest of A.R.B., 586 S.W.3d 846, 861

(Mo. App. W.D. 2019).

 We need not resolve this open issue. Even assuming the more demanding Strickland

standard applies to gauge the effectiveness of counsel in all juvenile proceedings, including

certification proceedings, we would not find that J.N.W. has sustained his burden to

establish that he received ineffective assistance of counsel. See In Interest of P.J.T., No.

SD36997, 2021 WL 5355228, at *6 (Mo. App. S.D. Nov. 17, 2021) (holding that, under

either standard, the juvenile was afforded effective assistance of counsel in a certification

 25
hearing), application for transfer pending in our Supreme Court in In Interest of P.J.T.,

No. SC99431.

 J.N.W.'s claim of ineffective assistance of counsel hypothesizes that had counsel

objected instead of stipulating to admission of the police report, then the juvenile court

would have reopened the record, at which time counsel would have objected to

consideration of portions of the police report--specifically hearsay statements from the

victim and statements made by J.N.W. during an illegal interrogation.

 There are several problems with J.N.W.'s contention. The most rudimentary is that

J.N.W. presumes the rules of evidence are applicable to section 211.071 certification

hearings, when that issue has not yet been resolved. Rule 116.02, which pertains to juvenile

proceedings, provides that "[a]t all hearings involving adjudication of the allegations of the

petition or motion to modify, the rules of evidence shall apply." However, a section

211.071 certification hearing does not involve an adjudication of the allegations of the

petition that brought the juvenile under the jurisdiction of the juvenile court. Nathan, 404

S.W.3d at 260. Since certification hearings are not adjudicatory "of the allegations in the

petition," there is no authority for the general proposition that the rules of evidence apply

to the proceedings. See D.E.G., 601 S.W.3d at 229 (Fischer, J., dissenting)13 ("While this

Court has not been previously asked to address this issue, every federal court that has

addressed the issue has held that the rules of evidence do not strictly apply in juvenile

certification proceedings. Similarly, several state courts that have addressed the issue have

 13
 The majority opinion in D.E.G. did not address whether the general rules of evidence apply to juvenile
certification proceedings. 601 S.W.3d at 215 n.2.

 26
held the general rules of evidence do not strictly apply to juvenile certification proceedings,

absent the statutes expressly prescribing that the general rules of evidence apply." (citations

omitted)). Certification counsel cannot be ineffective under either the Strickland standard

or the "meaningful hearing" standard for failing to raise an evidentiary objection unless it

is established that the rules of evidence have strict application in a certification proceeding.

J.N.W. does not bother to address this fundamental, but unresolved, issue, despite the fact

it is his burden to establish ineffectiveness of counsel.14

 Second, even if we assume (without deciding) that the rules of evidence strictly

apply in section 211.071 certification hearings, J.N.W.'s contention ignores that the

juvenile court's request to admit the police report into the record was expressly driven by

the fact that both Dr. Garbarino and the Juvenile Officer reviewed and relied on the report

to form their opinions that J.N.W. was a proper subject to be dealt with under Chapter 211.

The juvenile court was not obligated to summarily accept the opinions of Dr. Garbarino or

the Juvenile Officer, and was instead directed by statute to exercise its discretion in

determining whether J.N.W. was a proper subject to be dealt with under Chapter 211.

Certification counsel's stipulation to admission of the police report was a reasonable

strategy since J.N.W.'s own expert and the Juvenile Officer relied on the unredacted report

to form their opinions.

 With respect to J.N.W.'s specific contention that statements in the police report were

subject to suppression because they were procured in violation of his Fifth Amendment

 14
 Also of potential relevance to future resolution of this issue in an appropriate case could be Rule 129,
which is applicable to proceedings conducted pursuant to section 211.071.

 27
privilege against self-incrimination, we are not persuaded that an objection seeking to

redact these statements from the police report would have been successful. By the time the

juvenile court asked the parties to consider stipulating to admission of the police report into

evidence, Dr. Garbarino had already testified about J.N.W.'s statements to the police,

including J.N.W.'s effort to minimize the severity of his attack on the victim, and J.N.W.'s

assertion that he never intended to hurt the victim. Had certification counsel objected to

consideration of these same statements in connection with admission of the police report,

it is unlikely the objection would have been sustained.15 See State v. Peal, 393 S.W.3d

621, 631 (Mo. App. W.D. 2013) (holding that party cannot invite error in the admission of

evidence and then claim trial court error in admission of the same evidence). Counsel is

not ineffective for failing to make a non-meritorious objection. State v. Clay, 975 S.W.2d

121, 135 (Mo. banc 1998).

 Finally, with respect to J.N.W.'s contention that statements made by the victim in

the police report were inadmissible hearsay, J.N.W. cannot demonstrate that he suffered

prejudice by admission of the statements, even assuming, arguendo, ineffective assistance

in the failure to object. It is not enough for J.N.W. to argue that the Order refers to the

victim's statements. The more demanding Strickland prejudice prong required J.N.W. to

demonstrate that there is a reasonable likelihood that the outcome of his certification

proceeding would have been different but for counsel's failure to object to admission of the

 15
 The Fifth Amendment prohibits the prosecution from using a defendant's compelled testimony in the
prosecution's case in chief. Oregon v. Elstad, 470 U.S. 298, 306-07 (1985). Since a certification hearing is not an
adjudication of criminal guilt or innocence, and does not require a juvenile court to determine whether a juvenile
committed the offense giving rise to the juvenile court's jurisdiction, it is not clear that Fifth Amendment
jurisprudence is strictly applicable to a certification hearing. However, we need not determine that issue.

 28
victim's statements in the police report. Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc

2006) (holding that satisfaction of prejudice prong of Strickland test requires showing of

reasonable probability that but for ineffective assistance of counsel, the result of the

proceeding would have been different). There is no argument to this effect advanced by

J.N.W., and we would not be persuaded even had there been. The victim's statements in

the police report that are referred to in the Order simply recount the manner in which

J.N.W. engaged in his attack. This is not a matter in meaningful controversy, as the fact

of, and in some respects the manner of, J.N.W.'s attack were addressed in the certification

summary and the Juvenile Officer's testimony. It is plain from the record that the juvenile

court was primarily animated by the extreme seriousness of J.N.W.'s offense, and by the

viciousness, forcefulness, and force of J.N.W.'s attack--factual findings J.N.W. either does

not challenge, or does not effectively challenge, on appeal, as we have explained, supra.

There is no reasoned basis to conclude that the juvenile court would have reached a

different determination in J.N.W.'s certification hearing had the victim's statements in the

police report been excluded from evidence.

 Point Two is denied.

Point Three: Juvenile Court's Appearance of Bias

 In his third point on appeal, J.N.W. argues that he was denied a fair hearing with an

impartial decisionmaker because a reasonable person, when viewing the record as a whole,

would find an appearance of bias and doubt the impartiality of the juvenile court. J.N.W.

complains of comments made by the juvenile court during Dr. Garbarino's testimony and

at the close of the evidence.

 29
 J.N.W. acknowledges that he did not seek to disqualify the judge or otherwise seek

a remedy at the time the juvenile court made the allegedly biased comments. J.N.W. asserts

that, because the juvenile court made the allegedly biased comments during the course of

the certification hearing, he was not obligated to preserve a claim that his right to due

process was violated until after the Order was entered. We disagree. "The rule is clearly

established that in order to preserve a constitutional issue for appellate review, it must be

raised at the earliest time consistent with good pleading and orderly procedure and must be

kept alive during the course of the proceedings." State v. Oglesby, 621 S.W.3d 500, 508

(Mo. App. W.D. 2021) (quoting Kirk v. State, 520 S.W.3d 443, 457 (Mo. banc 2017)).

This requirement allows the lower court the opportunity to identify the constitutional issue,

allows the opposing party to have adequate notice in order to respond to the alleged

constitutional violation, and allows the court to remedy any constitutional violations

without the need for an appeal. Id. Because J.N.W. did not raise his due process concerns

at the first opportunity, he has not preserved the claim of error for appellate review.

 However, Rule 84.13(c) gives us authority to consider unpreserved constitutional

challenges for "plain error" affecting the appellant's substantial rights. In Interest of J.T.J.,

635 S.W.3d 566, 571 (Mo. banc 2021). Plain error review requires a two-prong analysis

to determine: (1) whether there was an error that is evident, obvious, and clear; and (2)

whether a manifest injustice or miscarriage of justice occurred as a result of that error.

Ducoulombier v. Ford Motor Co., 621 S.W.3d 523, 528-29 (Mo. App. W.D. 2021).

 As noted supra, juveniles are entitled to due process in a certification proceeding,

namely a hearing, the right to counsel, access to his or her records, and a determination

 30
from the juvenile court that adequately sets forth the basis of its decision as to permit

meaningful appellate review. Nathan, 404 S.W.3d at 260. Inherent in the right to a hearing

is the right to an impartial decision maker. In re Marriage of Farris, 485 S.W.3d 827, 829

(Mo. App. S.D. 2016). Accordingly, "[d]ue process concerns permit any litigant to remove

a biased judge." McFadden v. State, 553 S.W.3d 289, 302 (Mo. banc 2018) (quoting

Thomas v. State, 808 S.W.2d 364, 367 (Mo. banc 1991)).

 We presume that a judge acts with "honesty and integrity" and that the judge "will

not preside over a trial in which he or she cannot be impartial." State v. Howell, 626 S.W.3d

758, 768 (Mo. App. W.D. 2021) (quoting Worthington v. State, 166 S.W.3d 566, 579 (Mo.

banc 2005)). Rule 2-2.11(A) requires a judge to "recuse himself or herself in any

proceeding in which the judge's impartiality might be reasonably questioned." Recusal is

required "when a reasonable person would have factual grounds to find an appearance of

impropriety and doubt the impartiality of the court." Howell, 626 S.W.3d at 768 (quoting

Anderson v. State, 402 S.W.3d 86, 91 (Mo. banc 2013)). We review the entire record in

determining whether recusal was necessary. Anderson, 402 S.W.3d at 92. And in

reviewing the entire record, we must consider the comments in context given the

circumstances before the court when the statements were made. Haynes v. State, 937

S.W.2d 199, 204 (Mo. banc 1996).

 Our review of the record reveals that the juvenile court did not plainly err in failing

to recuse himself, and that the juvenile court's comments did not deprive J.N.W. of due

process. With respect to the juvenile court's comments during Dr. Garbarino's testimony,

it is clear from the record that the juvenile court was concerned that Dr. Garbarino's general

 31
testimony about the difference between the reactions of adolescents and adults was not

relevant to the ultimate issue in J.N.W.'s certification hearing. The juvenile court's

comments demonstrated an effort to streamline the certification hearing and to conserve

judicial resources, and did not plainly demonstrate bias. See State ex rel. S.F.F. v. S.C.G.,

554 S.W.3d 512, 520 (Mo. App. E.D. 2018) ("The trial court's efforts to streamline the

proceedings are reflective of its common sense and concern for judicial and client

resources, which is not an error."). The juvenile court's comments during Dr. Garbarino's

testimony would not have caused a reasonable person to find an appearance of impropriety

and doubt the impartiality of the juvenile court.

 The juvenile court's other comments about which J.N.W. complains were made

after the conclusion of the evidence and in connection with the juvenile court taking the

matter under advisement. Section 211.071.1 tasks juvenile courts with exercising

discretion to determine whether to dismiss a juvenile proceeding in favor of transferring

the juvenile to a court of general jurisdiction for prosecution. At the point the juvenile

court indicated that it was "troubled by this case" and that the case "[was] one of the most

. . . serious cases that I've ever seen a juvenile commit," the juvenile court had heard the

evidence. The court's assessment of the evidence was necessary to the completion of the

case. See Haynes, 937 S.W.2d at 204 ("The judge who presides at a trial may, upon

completion of the evidence, be exceedingly ill disposed towards the defendant . . . . But

the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion

it produced were properly and necessarily acquired in the course of the proceedings, and

are indeed sometimes (as in a bench trial) necessary to completion of the judge's task."

 32
(quoting Liteky v. United States, 510 U.S. 540, 550-51 (1994))). The juvenile court's

comments certainly indicate that the juvenile court was troubled by Dr. Garbarino's and the

Juvenile Officer's recommendation that J.N.W. remain subject to the juvenile court's

jurisdiction. But, those comments would not have caused a reasonable person to find an

appearance of impropriety and doubt the impartiality of the juvenile court when expressed

at the conclusion of the hearing.

 Point Three is denied.

 Conclusion

 The juvenile court's Order is affirmed.

 __________________________________
 Cynthia L. Martin, Judge

All concur

 33